**Allen H. BELL, Appellant,**

v.

**STATE FARM INSURANCE COMPANIES et al.,
Appellee.**

No. 04–96–00008–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 26, 1997.

Rehearing Overruled March 19, 1997.

Carl Pipoly, Law Offices of Carl Pipoly, San Antonio, for appellant.

David V. Jones, Lori M. Cliffe, Jones, Kurth & Andrews, P.C., San Antonio, for appellee.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

Allen H. Bell appeals from a summary judgment granted in favor of appellee State Farm Lloyds Ins. Co. ("Lloyds"). Arguing he was confused by State Farm's letterhead, Bell sued "State Farm Insurance Companies" within the limitations period as a "group of affiliated insurance companies" but failed to serve Lloyds. Because we find that Bell knew Lloyds was not served and not a party, and never added Lloyds as a party, we will not invoke TEX.R. CIV. P. 28 on his behalf. On the limitations defense, we affirm.

## FACTS

Bell was a public adjustor who helped his clients file claims with their insurance companies. Bell would evaluate the insured's loss and help with claims in return for an assignment of a portion of the proceeds. Bell took legal action when a trio of State Farm companies—State Farm General Insurance Company ("State Farm General"), State Farm Fire & Casualty Company ("State Farm Fire & Casualty") and State Farm Lloyds Ins. Co. ("Lloyds")—sent letters to his clients questioning the legality of Bell's representation. A typical excerpt, from a letter made the basis of Bell's original suit, follows:

Dear Ms. Garcia:

We acknowledge receipt of a copy of your Notice of Loss and Sworn Statement in proof of loss which has been forwarded to us by Al Bell and Associates. We have also received an Assignment of Interest and Proceeds of Insurance which you apparently have executed in favor of Al Bell and Associates. In light of this assignment, Al Bell and Associates will be entitled to receive a portion of any monies paid to you as a result of this claim and will, therefore, be necessary for us to include their names on any claim draft at the time of settlement of your claim. In as much [sic] as it does not appear that Al Bell and Associates is a licensed attorney, we will need to continue to communicate directly with you regarding the making [of] claims, settlement of the loss and also regarding any questions which you might have concerning your rights, duties or privileges under the policy rather than communicating with you through Al Bell and Associates....

This letter, dated January 14, 1991, was signed by Julia T. Blakemore, a claim specialist with State Farm Fire Insurance Company. The letterhead identified the letter generally as coming from "State Farm Insurance Companies" and specifically from the "State Farm Claim Service Center, 4655 Walzem Road, San Antonio, Texas 78218."

Eventually, more than a dozen letters with similar phrases and warnings were made part of the record in this proceeding. Many, but not all, of the letters identified which State Farm entity the agent worked for.

On January 9, 1992, Bell filed suit accusing the companies of tortious interference with his contractual relations with his clients. The petition was styled "Allen H. Bell v. State Farm Insurance Companies, et. al." The body of the petition also included Sue Noll, claims superintendent with State Farm Fire & Casualty, as a defendant. The suit stated, "Defendant, State Farm is a group of insurance companies licensed to do business in Texas with various offices located in Bexar County, Texas. State Farm does business as State Farm Fire & Casualty Insurance and State Farm General Insurance Company as well as other names." Service was completed on Noll and on Bruce Romig of Austin, designated agent for both State Farm Fire & Casualty and State Farm General.

The original answer was filed on behalf of Noll, State Farm General and State Farm Fire & Casualty. It stated that the companies were "improperly misnamed as 'State Farm Insurance Companies', a nonexistent entity" and entered a general denial on behalf of State Farm General, State Farm Fire & Casualty and Noll. These defendants subsequently removed the action to federal court on a plea of diversity.

One significant event occurred while the action was pending in federal court. Bell filed a Motion for Leave to File Amended Pleadings on September 18, 1992, specifically seeking to add Lloyds as a defendant. The motion noted that Lloyds had not been served and properly identified the company's designated agent for service of process in Dallas. The federal trial court did not rule on this motion because it remanded the cause to state court on March 3, 1993, after finding incomplete diversity among the parties.

On the same day the cause was remanded, defendants filed a motion for summary judgment. Bell responded by filing a Second Amended Petition on April 1, 1993, which purported to clarify the defendants' status:

Defendant, State Farm is a group of affiliated insurance companies each licensed to do business in Texas with various offices located in Bexar County, Texas or a defacto [sic] partnership· of such companies. State Farm Fire & Casualty Insurance State Farm General Insurance Company and State Farm Lloyds all do business as "State Farm" and as "State Farm Insurance Companies" and share employees. Defendant State Farm Insurance Companies has been served and has entered an appearance in this cause.

Summary judgments for State Farm General, State Farm Fire & Casualty and Sue Noll were ultimately granted, along with a severance from whatever cause of action remained. Those judgments were not appealed.

On November 8, 1994, Bell moved for summary judgment against Lloyds, alleging that Lloyds was properly before the Court and had ignored requests for admissions, with the resulting deemed admissions establishing its liability for tortious interference as a matter of law. On December 9, 1994, Lloyds answered denying it was properly before the court; Bell's motion was subsequently denied. Lloyds then filed its own motion for summary judgment, alleging Bell's claim was barred by the statute of limitations, res judicata and legal justification, and that Bell failed to state a cause of action. The trial court granted Lloyds' motion in a general order that did not specify the ground on which it was granted. Plaintiff appeals, assigning six points of error.

## STANDARD OF REVIEW

Summary judgment is proper when the moving party establishes there is no genuine issue of material fact and therefore its entitlement to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–549 (Tex.1985). The reviewing court will take as true all evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon,* 690 S.W.2d at 549. A defendant moving for summary judgment on an affirmative defense must conclusively prove all elements of that de-

fense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). If the order is not specific as to the grounds on which the trial court granted summary judgment, we must affirm on any meritorious theory. *Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *Sipes v. Petry & Stewart,* 812 S.W.2d 428 (Tex.App.—San Antonio 1991, no writ).

## STATUTE OF LIMITATIONS

■ Plaintiff's cause of action is governed by a two-year statute of limitations. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986 and supp.1997); *Dwyer v. Sabine Mining Co.,* 890 S.W.2d 140, 142 (Tex.App.—Texarkana 1994, writ denied). In his first point of error Bell complains that Lloyds failed to establish all elements of its affirmative defense of limitations as a matter of law. He argues that this is a suit on a trade name governed by TEX.R. CIV. P. 28, which would toll the statute of limitations and allow amendments to relate back to the date of the original filing. We believe that the Texas Supreme Court has limited application of TEX.R. CIV. P. 28 to exclude its operation in this case.

TEX.R. CIV. P. 28 allows any company, association or person to be sued in its "partnership, assumed or common name for the purpose of enforcing for or against it a substantive right." This is a procedural rule of equity which permits a court to depart from traditional notice requirements in the interest of justice.

> Rule 28 allows the injured party to sue the obvious entity, the trade name, and thereby toll the statute pending the discovery of the particular corporate entity that should be sued. It ends the practice which allowed the shell company ... to file a general denial and then to wait until the statute had run before disclaiming responsibility and pointing a finger at the corporation actually responsible.

*Continental Trailways v. Hilland,* 516 S.W.2d 279, 281 (Tex.App.—Houston 1974), *rev'd on other grounds sub nom. Continental S. Lines, Inc. v. Hilland,* 528 S.W.2d 828 (Tex.1975); *see also Enserch Corp. v. Parker,* 794 S.W.2d 2 (Tex.1990).

■ Here, Bell arguably has sued Lloyds in its "trade name" of "State Farm Insurance Companies." However, once a plaintiff has identified the real party in interest, he must properly join that party or risk losing his cause of action. *Bailey v. Vanscot Concrete Co.,* 894 S.W.2d 757 (Tex.1995).

In *Bailey,* plaintiff was injured by a load of tainted concrete. The truck that delivered the concrete and the sales invoice were both marked "Express/Pennington." *Id.* at 758. Looking in the Tarrant County assumed name records, Bailey determined Vanscot Concrete Co. owned two companies: Express Concrete Company and Pennington Concrete Company. He filed suit against Vanscot. *Id.* Vanscot defended by arguing it had ceased to exist as the result of a merger and moved for summary judgment. *Id.* In his reply, Bailey asked the court to either allow him to proceed to trial against Vanscot as if no merger had occurred or to allow him to substitute Tarmac Texas, Inc., the successor company, as defendant. The court overruled the motion for summary judgment, but Bailey did not join Tarmac Texas. *Id.* After a jury returned a judgment in his favor, Bailey moved for judgment against "Vanscot Concrete Company d/b/a Express/Pennington Concrete Co." and "Tarmac Texas d/b/a Express/Pennington Concrete Co." The trial court entered judgment under the former but not the latter. *Id.*

The Court of Appeals reversed. It held that judgment could not be entered against a nonexistent company and that Tarmac Texas had never been properly joined as a party. *Bailey,* 894 S.W.2d at 759. Bailey argued that he had properly sued Tarmac Texas under its then-existing trade name, Express/Pennington Concrete Co., and that this action implicated TEX.R. CIV. P. 28 and *Hilland,* 516 S.W.2d at 281. The Texas Supreme Court held that it did not:

> Once Vanscot identified Tarmac as the real party in interest in 1990, Bailey should have amended his pleadings to add Tarmac. Bailey could then have made a strong equitable estoppel argument under the principles articulated in *Continental Southern Lines* and *Enserch* that the trial court should toll the statute of limitations

since Tarmac had notice of the suit ... This scenario never materialized, however, because Tarmac was never added as a party in this case. This court declines to correct Bailey's error by retroactively substituting in the correct party on his behalf.

*Bailey,* 894 S.W.2d at 761.

■ In this case, Bell knew that "State Farm Insurance Companies" was a mere trade name from the first reply to his lawsuit. We know that Bell knew Lloyds was not in the suit on September 18, 1992 (well within the limitations period) because that was when Bell tried to add Lloyds as a defendant in federal court. Given this, he cannot claim to have been misled by a defendant "laying behind the log" and the protections of TEX.R. CIV. P. 28 would be inappropriate.

If Bell had amended his pleadings to include Lloyds at any time before judgment against him, we would have a different case before us. Bell could have then invoked the principles of *Hilland* and *Enserch* to toll the statute of limitations. *Bailey,* 894 S.W.2d at 761.[1] For whatever reason, however, Bell chose not to add Lloyds as a party before judgment was rendered against him. Given the fact that Bell would not do this for himself, we will not do it for him.

■ On appeal, Bell seeks to remedy this situation by urging this court to take judicial notice that Bruce Romig is also listed as an underwriter for Lloyds. As an underwriter for a Texas Lloyds insurance corporation, Bell argues, Romig is a proper party for service of process under the Texas Insurance Code. We are not permitted to consider this new evidence or argument; Bell did not raise the issue in the trial court in opposition to the motion for summary judgment. An appellate court may only consider the record before the trial court at the time of the granting of the summary judgment motion. TEX. RULE CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 675 (Tex.1979). We overrule Bell's first point of error.

Because our treatment of the first point of error is dispositive of this case, we need not reach the other points.

The judgment of the trial court is affirmed.

HARDBERGER, Chief Justice, dissenting.

I respectfully dissent from my esteemed colleagues. In doing so, I recognize the question is a close one. The case is decided on the statute of limitations, as it must be. There is little dispute that a cause of action is stated of tortious interference. Under ordinary circumstances this would be sorted out by a jury. This right is cut off under the majority opinion even though the defendant, Lloyds, had notice of the lawsuit from the time it was filed, which was well within the statute, and even though Lloyds was later joined in the lawsuit, although not served.

The majority fairly sets out the facts in this case, so they need not be repeated in this dissent. Significant dates are as follows:

January 14, 1991—date of the offending letter.

January 9, 1992—lawsuit filed.

April 1, 1993—Lloyds named in Plaintiff's Second Amended Petition.

The following defendants were originally sued:

1. State Farm Insurance Companies, dba State Farm General Insurance Company and State Farm Fire and Casualty Company.

2. Sue Noll, claims superintendent, State Farm Fire & Casualty.

Service was timely completed upon the following:

1. Bruce Roming, designated agent, State Farm Fire & Casualty and State Farm General.

2. Sue Noll.

Bell did not quite have it right, although he was close. The correct name was State Farm Lloyd's Ins., Inc. The letters that Bell was complaining about were headed State Farm Insurance Companies, and signed by various claim representatives who identified

---

**1.** Note that plaintiff in *Bailey* had a stronger claim to equity than in the instant case; Vanscot had actually been an operating company with a separate legal existence prior to Bailey's suit. Here the evidence shows "State Farm Insurance Companies" never had a separate legal existence.

themselves as "Claim Representative, State Farm Lloyds." The letters list the address of the home office of all of the State Farm entities as Bloomington, Illinois, 61710–0001. On April 1, 1993, during the middle of the lawsuit and after the statute ran, Bell named Lloyds as a company doing business as "State Farm Insurance Companies." Lloyds was not specifically served, but did file an answer and made an appearance in the case and sought affirmative relief in federal and state court. Lloyds was ultimately successful in obtaining a summary judgment against Bell based on the statute of limitations and other grounds.

Ultimately, the question is whether Bell was guilty of "too little, too late." The answer to this question leads us into the difficult case law distinctions of "misnomer" and "misidentification." If it is a "misnomer," the statute is tolled; if it is a "misidentification," it is not tolled. *Hernandez v. Furr's Supermarkets, Inc.*, 924 S.W.2d 193, 196 (Tex.App.—El Paso 1996, writ denied). The rule is simple, but the classification distinctions and the application of these distinctions to facts is obscure and more suited to the classroom than real life. We know that Texas policy is now, after many miscarriages of justice in the past, to discourage companies from avoiding liability by complex organizational charts and interlocking entities. *See* Tex.R. Civ. P. 28; *Continental Trailways v. Hilland*, 516 S.W.2d 279, 281 (Houston [14th Dist.] 1974), *rev'd on other grounds sub nom. Continental Southern Lines v. Hilland*, 528 S.W.2d 828 (Tex.1975). This most frequently happens when a company holds itself out to the public using one name, but has a separate legal corporate name. State Farm is a wellknown, large, and reputable company. It has an extensive and effective advertising program. It takes a dull mind not to recognize the registered slogan: "Like a good neighbor, State Farm is there." Most people can hum the tune that goes with the words. State Farm Lloyd's, Inc. is the correct name, but few outside the organization know that. Bell's error does not seem to me to be a major one as long as no injustice is done to the defendant. If Lloyds had notice, I see no injustice.

Lloyds obviously had notice. Two entities of State Farm were originally named in the lawsuit, as well as the more recognized name of State Farm Insurance Companies. This is the name that all three State Farm entities use on their stationary, and they all have the same address. It is, in every way, their public name. When Lloyds was finally sued, it answered the lawsuit, made several successful maneuvers, defeated Bell's summary judgment claims, and won its own. The allegations never changed, and the basis of the suit never changed. Lloyds never denied any of the underlying facts, and strongly defended its right to do what it did. Lloyds put on an aggressive, capable defense. Only one part of its defense was misidentification. The case was fully developed.

As to the distinctions between "misnomer" and "misidentification," I cannot do better than the El Paso court's recent opinion in *Hernandez*:

> [T]he primary distinction between misnomer and misidentification is whether the correct party *received notice* of the suit, under whatever name. If the correct party is served under an assumed name, it is a misnomer. If an incorrect party is named and the correct party does not learn of the suit, however, it is misidentification and the statute is not tolled.

*Hernandez*, 924 S.W.2d at 196 (emphasis in original).

The majority mentions that a "significant event" occurred while this action was pending in federal court. This action was Bell's attempt to add Lloyds as a defendant on September 18, 1992. I agree that this showed that Bell knew Lloyds should be a defendant on that date. Another significant event occurred during that time period though. Lloyds filed a motion for sanctions against Bell, complete with an affidavit from the attorney for Lloyds. The federal district court would not allow it to be filed because the movant was not a named party and could not file a pleading. All of this occurred on or before December 22, 1992. The significance of this act is that Lloyds was acting as a party to the lawsuit, even though it had never been served. The truth is, both parties by this time, which was well within the

statute of limitations, were acting as adverse parties against each other.

This was not even the end of the matter. Lloyds continued to act as a named defendant—an effective, fighting defendant at that. Lloyds filed an answer to Bell's Second Amended Petition on December 9, 1994. No statute of limitations defense was raised, presumably because Lloyds thought it was in the lawsuit. Lloyds filed a jury demand the same day. Lloyds filed a response to Bell's summary judgment motion in December, 1994. Lloyds filed a First Amended Original Answer on February 9, 1995, raising the statute of limitations, and substantive defenses. Eventually, Lloyds defeated Bell's motion and prevailed on its own. Whatever else may be said, Lloyds was never prejudiced by Bell's failure to properly serve it. Lloyds beat Bell at every turn.

Even though Lloyds was not prejudiced by never being served, the question remains whether the fact that it was never served under the proper name makes any difference. I do not believe it does. Lloyds' action in answering the suit dispensed with the necessity of service upon it. The rules of civil procedure provide that "[a]n answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance of service of citation upon him." TEX.R. CIV. P. 121.

The majority, citing *Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757 (Tex.1995), says "[i]f Bell had amended his pleadings to include Lloyds at any time before judgment against him, we would have a different case before us." I think Bell did include Lloyds and *Bailey* is inapplicable. Bell included Lloyds in his second amended petition, filed April 1, 1993. Lloyds is clearly identified as an offending entity of State Farm.

A close reading of *Bailey* reveals a different situation than that involved in the instant case. Bailey, in a contaminated concrete case, never joined the proper entity—Tarmac Texas, Inc. *Bailey*, 894 S.W.2d at 758. Bailey sued a company named Vanscot Concrete, a company that no longer existed having already merged with another company. *Id.* Bailey prosecuted the whole suit against a non-existent company. *Id.* A plaintiff can-

not recover against thin air. The court ultimately held that Tarmac, the real party, should have been added to the pleadings. *Id.* at 761. The court noted that "Bailey could then have made a strong equitable estoppel argument ... that the trial court should toll the statute of limitations since Tarmac had notice of the suit...." *Id.*

In this case, Bell's sin is not that he sued a non-existent company. Nor is Bell's sin his failure to join the proper party. He merely failed to properly serve Lloyds, which was remedied when Lloyds entered an appearance by answering the suit. Lloyds very much existed, knew of the suit, and was joined only slightly outside the statute. In my opinion, the situation in the instant case is closer to the situation in *Enserch Corporation v. Parker*, 794 S.W.2d 2 (Tex.1990). In *Enserch*, a wrongful death action, the plaintiff sued Lone Star Gas Company initially before the statute ran. *Enserch*, 794 S.W.2d at 4. Unfortunately, this was the wrong company. *Id.* After the statute of limitations had run, the plaintiff filed an amended petition naming Enserch Corporation d/b/a Lone Star Gas Company as a defendant. *Id.* Summary judgment was granted on the statute of limitations defense, but this was later reversed by the supreme court on the grounds that "[b]oth Lone Star Gas Company of Texas, Inc., and Enserch Corporation d/b/a Lone Star Gas Company were fully cognizant of the facts of the accident and could not have been misled concerning the basis of the suit." *Id.* at 6.

The same situation is present here. Lloyds, the proper party, was not joined until shortly after the statute ran. But Lloyds could not have been misled concerning the basis of the suit. It came out fighting and seeking affirmative relief in the federal and state courts and got it.

I would reverse the summary judgment to the extent it is based on the statute of limitations.